DAMIÁN ROMERO GARCÍA, WILLIAM LÓPEZ ALIMÁN, deman-
dantes y recurridos, *v.* HOWARD JOHNSON'S VILLA MA-
RINA RESORT, INC. Y SUS RESPECTIVAS COMPAÑÍAS ASE-
GURADORAS X,Y,Z, demandadas y recurrentes.

*Número:* R-82-138      *Resuelto:* 30 de junio de 1982

*Javier Criado Vázquez*, abogado de las recurrentes; *Eugenio Luis
Santoni*, de *Jiménez & Santoni*, abogados de los recurridos.

## SENTENCIA

Howard Johnson's Villa Marina Resort, Inc. y su ase-
guradora recurren de la sentencia del Tribunal Superior,
Sala de Humacao, imponiéndoles la obligación de indem-
nizar a los recurridos Damián Romero García y William
López Alimán.

Ambos radicaron acciones separadas —consolidadas por
originarse en una misma causa de acción— alegando en
síntesis que para el mes de julio de 1978 se desempeñaban
como contratistas independientes en labores de reparación y
mantenimiento de botes en la marina existente en las facili-
dades de la demandada; Damián Romero García adujo que
para dicha fecha tenía arrendado un apartamento por un
canon mensual de $350 —que dejó de pagar cuando la deman-
dada se negó a resarcirle $1,587 en concepto de varios ar-
tículos que le fueron hurtados por la negligencia de ésta—; y
William H. López alegó ser huésped de Damián Romero.
Basan su acción en que la demandada a principios de
diciembre de 1978, sin causa justificada, les prohibió la en-
trada a las facilidades en las cuales cumplían contratos pre-
acordados de mantenimiento, perdiendo dicha fuente de in-
gresos y viéndose obligados durante varios meses a dedicarse
a diferentes labores poco remuneradas.

## I

El tribunal encontró probado que la prohibición fue injustificada y da a entender que la misma fue motivada por "existir un conflicto en la relación contractual entre las partes por motivo del alquiler del apartamento antes mencionado". Ese conflicto surgió al ser escalado el apartamento que ocupaba Romero García, "a consecuencia de la negligencia de la parte demandada al dejar abiertos los espacios que ocupaban las unidades de climatización del mismo. El señor Romero sufrió pérdida de propiedad estimada en $1,587.00, cantidad que reclamó a la demandada infructuosamente. El señor Romero dejó de pagar los cánones de arrendamiento correspondientes a los meses de agosto hasta diciembre de 1978, ascendentes a $1,750.00". Además de negarle la entrada a sus facilidades, la demandada también "procedió a cambiarle la cerradura al apartamento que mantenía arrendado el Sr. Romero, sin que mediara orden judicial, aduciendo para dichos actos la falta de pago de los cánones antes mencionados".

Autorizamos la transcripción de la prueba y tenemos el beneficio de su lectura y comparecencia de ambas partes. El análisis integral nos convence de que debe modificarse la sentencia en lo concerniente a la causa de acción por la negativa a permitir la entrada a las facilidades. Aparece claramente que a los demandantes se les exigió que cumplieran con unos requisitos de seguridad implementados por los agentes de la demandada. No puede erigirse responsabilidad ilimitada por la prohibición de un guardia de seguridad en horas de la madrugada del 5 de diciembre de 1978. Esa negativa estuvo justificada.

Curiosamente el tribunal sentenciador no dio crédito al testimonio del contralor de la marina, Sr. Félix Camacho, sobre la implementación de esas normas. Surge, no obstante, que le merecieron credibilidad los testimonios de los demandantes sobre las pérdidas sufridas sin que éstos o sus

testigos produjeran un solo documento acreditativo de tales ganancias y aun cuando ambos admitieron que *no* rendían planillas de contribución sobre ingresos. Salvo una alegada gestión verbal, no solicitaron por escrito permiso de entrada. Tampoco los demandantes obtuvieron autorizaciones directas con los dueños de las embarcaciones o de las personas que les encargaban los trabajos. Lo menos que podemos decir es que no actuaron afirmativa y diligentemente para obtener el permiso y minimizar daños conforme los trámites impuestos en enero de 1979.

En las circunstancias expuestas no podemos suscribir la extensión excesiva que en daños concede la sala de instancia respecto a la negativa a permitirles la entrada.[1] Aun bajo la hipótesis de que tal acción estuviera influenciada por el problema del alquiler del apartamento, ninguno de los demandantes tenía un derecho permanente, irrestricto y absoluto de entrada. Podía la demandada exigir el cumplimiento de unos trámites mínimos, tales como la producción de un certificado de buena conducta de la policía y retratos para expedir el permiso, en unión a la autorización escrita de los dueños de las lanchas. La prueba establece que ese sistema de seguridad se implantó a fines de diciembre de 1978 y principios de enero de 1979. Presumiendo que la negativa original no estuvo justificada, según lo entendió la sala de instancia, ello configura una causa de acción limitada al mes de diciembre no susceptible de ser extendida durante meses posteriores por falta de diligencia de los demandantes.

En consecuencia, procede que se expida el auto y se dicte

---

[1] El tribunal erró al razonar y tomar como medida de tiempo para evaluar la pérdida de ingresos los 12 y 16 meses que les tomó a López y Romero, respectivamente, lograr "restablecerse a una situación económica más estable en trabajos mejor remunerados". En otras palabras, aun cuando ellos no gestionaron diligentemente y por distintos medios —incluso por la vía judicial y procesal de *injunction*— el permiso, y no cumplieron con las medidas exigidas para el mes de enero, les concede daños *ad infinitum* únicamente limitados por su mejoría económica. Repetimos, ese criterio es erróneo, inaplicable y carente de vínculo lógico entre el daño, relación de causalidad, conducta de las partes y tiempo.

sentencia en que se adjudique a los demandantes recurridos en concepto de pérdidas de ingresos *únicamente* el mes de diciembre.

A tal efecto, a base de la prueba desfilada, respecto al Sr. William López estimamos la cuantía de $1,000 razonable, [2] y por concepto de sufrimientos mentales la suma de $500. Respecto a los daños del Sr. Damián Romero la cuantía de $2,000 por pérdida total de ingresos [3] y $1,500 en concepto de daños mentales, incluso la intervención y privación ilegal del apartamento. También es acreedor a $1,587 por concepto de pertenencias robadas de su apartamento.

La demandada recurrente tiene un crédito que podrá oponer contra el Sr. Damián Romero de $1,750 por concepto de arrendamiento dejado de pagar. Procede también que se reduzca la cuantía de $5,000 a $1,500 concedidos en honorarios de abogado. Así modificada es confirmada.

Así lo pronunció y manda el Tribunal y certifica la señora Secretaria. El Juez Asociado Señor Díaz Cruz emitió voto disidente al cual se une el Juez Asociado Señor Dávila. Los Jueces Asociados Señores Torres Rigual y Rebollo López no intervinieron.

(*Fdo.*) Lady Alfonso de Cumpiano
*Secretaria*

—O—

Voto disidente del Juez Asociado Señor Díaz Cruz al que se une el Juez Asociado Señor Dávila.

No considero que deba concederse compensación por ingreso frustrado partiendo de la conclusión de que la intervención original del guardia de seguridad y la exclu-

---

[2] Declaró que devengaba $125 semanales de trabajo que realizaba para Marine World (T.E., pág. 26), y $500 de reparaciones del Yate del Sr. Andrés Guillemard, que "ya había terminado [en] gran parte". (T.E., pág. 36.)

[3] Atestó que devengaba entre $2,300 y $2,500 como ingreso total. (T.E., pág. 132.)

sión de los demandantes de sus predios no estuvo justificada. El guardia no podía admitir personas desconocidas, pasada la media noche, al área de las lanchas que para ese tiempo era campo de pillaje. El perjuicio, si alguno, que sufrieron los demandantes fue auto-infligido. Su comportamiento niega toda legitimidad a su reclamación desde el momento mismo en que le piden al guardia constancia escrita de que les ha impedido acceso a las lanchas, mas rehúsan consistentemente llenar la solicitud para la tarjeta de identificación exigida por normas de seguridad en Villa Marina y en casi todos los sitios de trabajo. No veo razón para resolver de modo distinto al criterio preliminar del Pleno, que fue de revocación total.